UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M.,<br><br>                        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                        Defendant. | Case No.: 22-cv-1454-DDL<br><br>**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[Dkt. No. 11]** |

Plaintiff Christopher M. seeks judicial review of the Social Security Commissioner's denial of his application for disability benefits. *See* Dkt. No. 1. The parties have consented to the undersigned's jurisdiction. Dkt. No. 4. Before the Court is the parties' Joint Motion for Judicial Review, in which Plaintiff moves the Court to remand his application to the Social Security Administration for an award of benefits or, alternatively, for further proceedings. *See generally* Dkt. No. 11. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is free of legal error and supported by substantial evidence and is therefore **AFFIRMED**.

/ / /

# I.

# BACKGROUND

## A. Plaintiff's Application for Disability Benefits

Plaintiff is a combat veteran who suffers from post-traumatic stress disorder ("PTSD"), depression, and other medical issues. On April 15, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging that these conditions rendered him unable to work as of February 28, 2009. *See* Certified Administrative Record ("AR") at 175-81.[1] After his application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 15. The telephonic hearing took place on April 4, 2022. *Id.* at 15, 29. Plaintiff appeared with counsel and gave testimony, and a vocational expert also testified. *Id.* at 29-48. The ALJ issued an unfavorable decision on April 18, 2022, having concluded Plaintiff was not disabled within the meaning of the Act "at any time from . . . the alleged onset date through . . . the last date insured." *Id.* at 12-25. The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner on July 28, 2022. *Id.* at 1.

## B. Summary of the ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The Administration employs a sequential five-step evaluation to make this determination.[2]

---

[1] The Court uses the parties' pagination of the AR. All other docket citations are to the page numbers generated by the Court's CM/ECF system.

[2] *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the

The ALJ who adjudicated Plaintiff's claim followed this five-step process in rendering his decision. *See generally* AR at 17-24. At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from the alleged date of the onset of Plaintiff's disability through June 30, 2014.[3] *Id*. at 17.

At step two, the ALJ found Plaintiff's depression and PTSD were severe, medically determinable impairments that significantly limited Plaintiff's ability to perform basic work activities. *Id*. Plaintiff's other alleged impairments of lumbar degenerative disc disease, right leg radiculopathy, generalized pain, tinnitus, and nicotine dependence were deemed not severe.[4] *See id*. at 17-18.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the impairments listed in the Listing of Impairments. AR at 18-19. Regarding Plaintiff's mental impairments, the ALJ determined Plaintiff had no limitation in understanding, remembering and applying information; moderate limitation interacting with others; mild limitation in

---

claimant is engaged in substantial gainful activity. Second, the ALJ must determine whether the claimant suffers from a severe impairment within the meaning of the regulations. Third, if the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments. Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether, given the RFC, the claimant can perform his or her past relevant work. At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC.

[3] Plaintiff last met the insured status requirements of the Act on June 30, 2014. *See* AR at 15. Therefore, to be eligible for benefits, Plaintiff must have been disabled on or before that date. *See id*.; *accord* 42 U.S.C. § 416(i)(2) and (3) (defining "period of disability" and eligibility requirements). The Court refers to this as the "last date insured," and, adopting the parties' terminology, refers to the period between February 28, 2009 and June 30, 2014 as the "Relevant Period."

[4] Plaintiff does not challenge this finding.

concentrating, persisting or maintaining pace; and no limitation in adapting or managing himself. *Id.* at 19. Because Plaintiff's mental limitations did not cause at least two "marked" limitations or one "extreme" limitation in these areas, the "paragraph B" criteria for Listings 12.04 (depressive, bipolar and other disorders) and 12.15 (trauma and stressor-related disorders) were not satisfied. *Id.* The ALJ further determined Plaintiff did not satisfy the "paragraph C" criteria for these Listings. *Id.*

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. *See* AR at 20-22. First, the ALJ considered Plaintiff's subjective testimony that his symptoms prevented him from working because, among other things, "he has impaired concentration" and "is not comfortable around people." *Id.* at 20. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's allegations as to their limiting effects were not supported by the medical evidence. *Id.* at 20-21. In support of this finding, the ALJ noted that Plaintiff's "mental health treatment [was] sporadic and generally unremarkable," citing normal results from mental status examinations, and Plaintiff's reports that his condition had improved, and his symptoms had become "intermittent" or "rare." *Id.* at 21. The ALJ also cited statements in the record indicating Plaintiff found medication and other treatment beneficial, but that he nevertheless "only engage[d] in treatment sporadically." *Id.* at 21-22. The ALJ found these facts "inconsistent with severe mental health impairments." *Id.* at 21.

Second, the ALJ considered prior administrative medical findings by state agency medical consultants Kelly O'Neill, Ph.D. and Dara Goosby, Psy.D., who each determined that Plaintiff had no limitations in understanding, remembering or applying information or in adapting or managing himself, mild limitations in concentrating, persisting or maintaining pace, and moderate limitations in
/ / /

interacting with others.[5] *Id.* at 22. Dr. O'Neill on initial review and Dr. Goosby on reconsideration both opined that Plaintiff "is able to interact appropriately with the public in brief, nonintensive and infrequent encounters." *Id*. The ALJ stated these findings were "generally persuasive," but concluded they "underestimated [Plaintiff's] limitations" insofar as the ALJ identified objective findings which would support a "limitation to simple work." *Id*.

Having considered the evidence in the record, including Plaintiff's testimony, the ALJ determined that during the Relevant Period, Plaintiff "had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to nonpublic and simple routine tasks with only occasional interactions with coworkers and supervisors." *Id.* at 20. The ALJ then found at step four that Plaintiff could not perform his past relevant work. *Id*. at 23.

At step five, the ALJ found Plaintiff "capable of making a successful adjustment to . . . work that exists in significant numbers in the national economy," based on the vocational expert's testimony regarding jobs which could be performed by someone with Plaintiff's RFC. AR at 23-24; *see also id.* at 52-54.

Based on the foregoing five-step analysis, the ALJ concluded Plaintiff had not been under a disability within the meaning of the Act during the Relevant Period. *Id.* at 24.

/ / /

/ / /

/ / /

---

[5]  A "prior administrative medical finding" is "a finding, other than the ultimate determination about whether [the claimant] [is] disabled, about a medical issue" by an agency medical consultant at a prior level of review "based on their review of the evidence in [the] case record." *See* 20 C.F.R. § 404.1513(a)(5).

## II.

## DISPUTED ISSUES

The parties raise three disputed issues:

**Issue No. 1**: Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony;

**Issue No. 2**: Whether the RFC reflects Plaintiff's mental limitations; and

**Issue No. 3**: Whether the ALJ's decision is supported by substantial evidence where Dr. Randall's and Dr. Lim's opinions were not considered.

*See* Dkt. No. 11 at 3.

## III.

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, -- F. 4th --, No. 22-35581, 2023 WL 5965704, at *3 (9th Cir. Sept. 14, 2023).[6] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.*

This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be

---

[6] All citations, internal quotation marks, and subsequent history are omitted unless otherwise noted.

upheld. *See id.* at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning that "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

## IV.
## DISCUSSION

**A. The ALJ's Decision Is Free of Legal Error**

*1. Consideration of Plaintiff's Subjective Symptom Testimony*

At the hearing, Plaintiff testified he stays in his apartment all day and rarely leaves the house because he does not "feel comfortable around people." AR at 35. He testified that, due to his PTSD, he suffers from racing thoughts, flashbacks and headaches, and isolates at home because he has difficulty focusing, maintaining relationships, and controlling his anger. *Id.* at 34-40. He has headaches once or twice a week, and he hears voices. *Id.* at 39-41. Plaintiff testified his "situation [has] been about the same since [he] stopped working in 2009." *Id.* at 35.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence because the medical evidence does not support the alleged loss of functioning." AR at 20-21. The ALJ identified evidence that "supported the mental limitations" in Plaintiff's RFC, including that he was diagnosed with PTSD and major depressive disorder as early as 2008, although they "were well controlled with medication." *Id.* at 21.

The ALJ also identified objective findings demonstrating Plaintiff's "severe depression," "poor performance of calculation, dysphoric mood, and imp[overished] thinking process" that "support[] the mental limitations" in the RFC assessment. *Id*.

The ALJ observed, however, that "[Plaintiff's] mental health treatment is sporadic and generally unremarkable." AR at 21. The ALJ identified medical evidence in conflict with Plaintiff's testimony regarding the limiting effects of his mental disorders, including:

- A mental status examination in March 2015 was "normal with no cognitive deficits." *Id. (*citing AR at 1146).

- A March 2016 examination revealed no worsening of his condition. *Id.* (citing AR at 1178).

- In May 2016, Plaintiff reported "some benefit with medication" and that "his mental health treatment was beneficial." *Id.* (citing AR at 1106).

- In January 2019, Plaintiff reported that "auditory hallucinations were rare," and he reported in February 2020 that "he hardly ever heard voices." *Id.* (citing AR at 769).

- In March 2021, Plaintiff reported that he "gets down from time to time, but nothing too bad" and that his depression was "only intermittent." *Id.* (citing AR at 770).

- In February 2022, Plaintiff "complained of depression and anxiety, but denied anhedonia, hopelessness, suicidal ideation, or increased auditory hallucinations." AR at 21-22 (citing AR at 770).

- "It was noted [Plaintiff's] psychotropic medications remained helpful and that [Plaintiff's] symptoms would worsen with [sic] the medications were interrupted." AR at 22 (citing AR at 771).

/ / /

The ALJ concluded that this information in the medical record "contravenes the alleged severity of [Plaintiff's] impairments" and "detracts from [Plaintiff's] alleged loss of functionality." AR at 21-22.[7]

The ALJ further concluded that "Plaintiff's allegations regarding the severity of his symptoms and limitations" were diminished by his failure to follow prescribed treatments, finding that "the record shows [Plaintiff] misses his appointments and only engages in treatment sporadically." AR at 22. The ALJ noted that Plaintiff was observed to have "a propensity to reduce medications on his own and to be lost to follow up." *Id.* at 22 (citing AR at 965, 969, 1012, 1032, 1106).

In the absence of evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's subjective testimony regarding the limitations caused by his impairment. *See Garrison*, 759 F.3d at 1014. The Court finds the ALJ did so here, by "enumerat[ing] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 2023 WL 5965704, at *5, as set forth above. *See* AR at 21-22; *Ahearn*, 988 F.3d at 1117 (affirming denial of benefits where ALJ "cited information in [claimant's] medical record that provided specific, clear and convincing reasons supporting a finding that [claimant's] limitations were not as severe as he claimed"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

---

[7] Although this evidence is outside of the Relevant Period, the Court finds it was appropriate for the ALJ to consider the entire longitudinal record in assessing Plaintiff's credibility, particularly considering Plaintiff's statements at the hearing that his symptoms have not changed since 2009 (AR at 35, 38). *See* 20 C.F.R. § 404.1529(c)(3) (requiring the ALJ to consider "all of the evidence presented" in assessing subjective symptoms). Having reviewed the record, and as discussed further below, the Court further notes that this evidence is consistent with mental status examinations and other objective evidence dated within the Relevant Period.

Plaintiff contends the ALJ erred in rejecting Plaintiff's subjective symptom testimony based on his treatment noncompliance. Dkt. No. 11 at 3. Citing Social Security Ruling ("SSR")16-3p, Plaintiff asserts the ALJ "had a duty to inquire" at the hearing about Plaintiff's noncompliance, and the failure to do so was harmful error because the evidence shows Plaintiff's financial hardship was the "likely" cause of his noncompliance. *Id.* at 5-6.

The Court disagrees. SSR 16-3p requires only that the ALJ "consider" the reasons a claimant "failed to follow prescribed treatment that might improve symptoms," which "may" include eliciting relevant testimony at the hearing. Where the reasons for noncompliance are amply demonstrated by the record, however, it may not be necessary for the ALJ to cross-examine the claimant about his treatment noncompliance. Here, the record does not support Plaintiff's statement that the "likely" reason for his treatment noncompliance was financial hardship. During the Relevant Period, Plaintiff had access to mental health services through the Department of Veterans Affairs ("VA"). *See generally* AR at 254-1180; *see also* SSR 16-3p (noting the ALJ may consider whether a noncompliant claimant "[has] access to free or low-cost medical services"). Plaintiff correctly notes that he reported to providers he was under financial strain which prevented him at times from obtaining treatment. Dkt. No. 11 at 4-5. Yet, Plaintiff also frequently provided non-financial excuses for his failure to attend therapy, telling providers he was too busy or ill to attend (AR at 490, 506, 1032), that he overslept (*id.* at 509), that therapy was not "benefitting" him (*id.* at 258-59), and that it was "too upset[ting]." *Id.* at 475. Even after Plaintiff's financial situation improved, his providers continued to report that he cancelled or failed to show for appointments and had "a propensity to reduce medications on his own." *See, e.g.,* AR at 761-65, 1012, 1032. On this record, the Court does not find any error in the ALJ's consideration of Plaintiff's treatment noncompliance.

/ / /

Furthermore, contrary to Plaintiff's assertion that his "noncompliance was the only reason cited by the ALJ to reject [Plaintiff's] testimony," Dkt. No. 11 at 6, the ALJ provided other reasons for finding the allegations of disabling symptoms less than credible. The ALJ observed Plaintiff himself reported to providers that he "gets down from time to time, but nothing too bad," and further cited objective findings that contradicted Plaintiff's testimony. AR at 21-22. "Contradiction[s] with the medical record" such as these are "a sufficient basis for rejecting the claimant's subjective testimony." *Kitchen*, 2023 WL 5965704, at *5; *see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ provided "a clear and convincing reason" to reject claimant's testimony by identifying "evidence [that] directly contradicted" it). The ALJ also identified entries in Plaintiff's medical records indicating his symptoms were controlled by medication as "detract[ing]" from the alleged severity of Plaintiff's symptoms. AR at 22. This, too, is a sufficient basis for finding Plaintiff's symptoms were not as disabling as alleged. *See Kitchen*, 2023 WL 5965704, at *5 (finding no error in ALJ's rejection of subjective symptom testimony where claimant's "functioning" improved "with prescribed medication and psychotherapy sessions"). Thus, to the extent the ALJ erred in failing to develop testimony regarding the reasons for Plaintiff's treatment noncompliance, any error was harmless because the ALJ cited other objective evidence contradicting Plaintiff's subjective symptom testimony. *See Carmickle*, 533 F.3d at 1162 (noting reversal is not proper even if ALJ errs, if his "remaining reasoning and ultimate credibility determination" are adequately supported).

   2. <u>Whether the RFC Accurately Reflects Plaintiff's Mental Limitations</u>

Plaintiff next argues his severe PTSD leads to poor attendance, an inability to establish and maintain relationships, difficulty coping with stressful situations, and violent outbursts, which are "not ameliorated" by an RFC that restricts him to "nonpublic, simple, routine tasks with occasional interaction with supervisors and

coworkers." Dkt. No. 11 at 14-15. The Court notes there is some tension between Plaintiff's assertion that he was unable to attend therapy appointments due to a lack of funds and the concomitant assertion that his poor attendance was a symptom of his mental impairments. Nevertheless, the Court has examined the ALJ's determination of Plaintiff's RFC and finds no error.

A claimant's "residual functional capacity is the most [the claimant] can still do despite [his or her] limitations," and is assessed "based on all the relevant evidence in [the] record." 20 C.F.R. § 416.945(a). The ALJ's task is to "translate" the claimant's limitations into "concrete restrictions." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating Plaintiff's RFC, the ALJ cited the objective medical evidence in support of the assigned limitations. AR at 21-22. For example, the ALJ noted Plaintiff suffered from depression and PTSD as corroborated by findings on mental status examinations, and specifically referenced Plaintiff's irritability, lack of interpersonal relationships, and tendency to isolate. *Id.* These and other findings in the record "support[ed] the mental limitations" in the RFC articulated by the ALJ. *Id.* at 21. However, for the reasons described above, the ALJ rejected Plaintiff's subjective assessment of the extent to which his impairments limited his ability to work. *See generally id.* at 21-22. The ALJ cited to the prior administrative medical findings in the record, including Dr. O'Neill's assessment that Plaintiff had no limitations in managing himself and "is able to interact appropriately with the public in brief, nonintensive and infrequent encounters," with which Dr. Goosby concurred on reconsideration. *Id.* at 22. However, due to Plaintiff's panic attacks, poor performance of calculation, dysphoric mood, and impaired thinking process, the ALJ determined it was appropriate to limit Plaintiff to simple work. *Id.*

On this record, the Court concludes the ALJ assessed Plaintiff's RFC as required by the regulations, appropriately considering all the relevant evidence as reflected by his findings as to the evidence he found persuasive and that which he

found not credible. Although Plaintiff cites evidence that could support a more restrictive RFC, it is not this Court's role to "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn*, 988 F.3d 1115.

### 3. Whether the ALJ Was Required to Consider Plaintiff's Compensation and Pension Examinations

Plaintiff argues the ALJ erred by not considering certain Compensation and Pension ("C&P") evaluations done by VA physicians, which he states are "opinions from medical sources" the ALJ was required to consider pursuant to 20 C.F.R. § 1520c.[8] Dkt. No. 11 at 19-21. The evaluations in question are a June 23, 2014 "C&P Examination Note" by Carol Randall, Ph.D. (*see* AR at 283-88) and a January 25, 2018 "C&P Examination Note" by Dina Lim (*see id.* at 971-980).

The Court finds no error in the ALJ's lack of explicit consideration of these evaluations. As an initial matter (and as the Commissioner correctly points out) Dr. Lim's examination note post-dates the Relevant Period by several years. *See* Dkt. No. 11 at 22. While evidence post-dating the last date insured is not *per se* irrelevant, results of examinations performed remote in time from the disability period are less probative than within-period evidence. *See Burkett v. Berryhill*, 732 F. App'x 547, 551 (9th Cir. 2018) (stating that "evidence concerning [a claimant's] symptoms and limitations outside the alleged period of disability does not qualify as significant or probative"); *see also Lewis v. Berryhill*, No. 4:18-CV-00017-REB, 2019 WL 1433758, at *7 (D. Idaho Mar. 29, 2019) (noting "to establish a severe impairment, Petitioner needed to demonstrate that his understood medically determinable impairments affect his ability to perform basic work activities during the relevant period"). That is particularly true in this instance, considering Dr. Lim's

---

[8] Plaintiff's further argument that ALJ's failure to do so renders the decision unsupported by substantial evidence (*id.* at 21) is addressed in the following section.

notation that Plaintiff's "symptoms [are] worse" than his prior evaluation in 2016 and observation of new symptoms and diagnoses that developed "this past year" (AR at 980).  *See Callahan v. Kijakazi*, --- F. Supp. 3d ---, 2023 WL 2166989, at *8 (E.D. Cal. Feb. 22, 2023) (finding ALJ did not err in disregarding a medical opinion where it was not established that the opinion was rendered "retrospective to a period prior to Plaintiff's last date insured").

Furthermore, another court in this District rejected a similar argument and persuasively concluded that the ALJ "was not required to treat [another agency physician's notes] as a medical opinion." *Darren Jeffrey C. v. Kijakazi*, No. 3:21-cv-01012-AHG, 2022 WL 4474261, at *20 (S.D. Cal. Sept. 26, 2022).  The *Darren Jeffrey C.* court observed that under SSA regulations, another agency's assessment of whether the claimant is disabled "is not binding" on the Commissioner.  *Id.* (citing 20 C.F.R. § 404.1504).  The agency's regulations further state the Administration:

> will not provide any analysis . . . about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits, [but] will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504; *accord Kitchen*, 2023 WL 5965704, at *4 ("Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating.").  Section 404.1513(a)(2), in turn, defines a "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s)," and whether the claimant "ha[s] one or more impairment-related limitations or restrictions" regarding his or her "ability to perform physical demands of work activities," "ability to perform mental demands of work activities," "ability to perform other demands of work, such as seeing, hearing, or using other

senses," and "ability to adapt to environmental conditions."  *See* 20 C.F.R. § 404.1513(a)(2)(i)-(iv).  A close reading of Drs. Randall's and Lim's "examination notes" reveals that, as in *Darren Jeffrey C.*, they were "not prepare[d] . . . in connection with Plaintiff's disability claim . . . [and] do[] not address those particular categories of functioning in the language that would be used on a standard Mental Residual Functional Capacity Assessment form."  *Darren Jeffrey C.*, 2022 WL 4474261, at *20.  Accordingly, the ALJ "did not commit legal error by failing to expressly discuss [Drs. Randall's and Lim's examination notes] and to articulate how persuasive he found [them] . . .."  *See id.*

Plaintiff argues that even if Drs. Randall's and Lim's examination notes "do not qualify strictly as medical opinions," their reports were "other medical evidence" the ALJ was required to address in his opinion.  Dkt. No. 11 at 25 (citing *Darren Jeffrey C.*).  The Court disagrees.  The ALJ in this instance detailed the evidence he found supported his nondisability determination and explained his reasons for finding contrary evidence unpersuasive. *See* AR at 19-23.  The ALJ was not required to explicitly address every item of evidence in the record.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence").

For the foregoing reasons, the Court finds the ALJ applied the correct legal standards in concluding Plaintiff was not disabled during the Relevant Period.

**B. The ALJ's Nondisability Determination Is Supported by Substantial Evidence**

Having found the ALJ's analysis free of legal error, the Court turns to the question of whether the ALJ's decision is supported by substantial evidence.  The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion," *see Ahearn*, 988 F.3d at

/ / /

1115, and finds substantial evidence supports the ALJ's nondisability determination. A summary of that evidence follows.

Plaintiff was diagnosed with PTSD and depression as early as 2008. *See, e.g.,* AR at 531, 546-47. Mental health questionnaires administered at various intervals during the period 2008 to 2014 demonstrated symptoms consistent with PTSD and depression. *See id.* at 260-61, 280, 622-646. The medical record also reflects Plaintiff's subjective reports of nightmares, flashbacks, intrusive thoughts, forgetfulness, and irritability. *Id.* at 596-98, 707-11. By both self-report and provider observation, Plaintiff's symptoms worsened under stress and improved with therapy, medication, and activity outside the house. *See, e.g., id.* at 265, 476, 490, 539, 764, 771, 1025.

Mental status examinations during the Relevant Period revealed poor performance on calculations and mild memory loss, but findings in other areas, including judgment, insight, thought process and cognitive thinking, were benign. *See, e.g.,* AR at 292-94, 476-78, 493, 496-97. A C&P examination for PTSD dated November 14, 2011 concluded Plaintiff had "mild or transient symptoms which affect [his] ability to perform work tasks only during times of increased stress" and that were "controlled by medications." *Id.* at 707-711. As confirmed by the ALJ at the hearing, during the period Plaintiff is alleged to have been disabled, he completed an Associate's degree in computer electronics and a 52-week domestic violence prevention program. *Id.* at 37-38, *see also id.* at 279, 286.

Reviewing the medical record at the initial level, Dr. O'Neill determined that Plaintiff had no limitation in his ability to understand, remember or apply information or to adapt or manage himself, mild limitations in his ability to concentrate, persist or maintain pace, and moderate limitation in his ability to interact with others. AR at 55. Dr. O'Neill concluded Plaintiff could work with a limitation to low public contact. *Id.* at 55, 58, 61. On reconsideration review, Dr. Goosby concurred with Dr. O'Neill's assessment and concluded that Plaintiff is

"able to sustain unskilled work," again with a limitation to low public contact. *Id.* at 69-70, 75.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's discrediting of Plaintiff's subjective symptom testimony and the development of Plaintiff's RFC, and the ALJ's subsequent determination that Plaintiff was not disabled during the Relevant Period. *See Kitchen*, 2023 WL 5965704, at *3; *see also* 42 U.S.C.A. § 405(g) (providing that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's decision was free of legal error and was supported by substantial evidence. Plaintiff's request for reversal and remand is therefore **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: September 28, 2023

Hon. David D. Leshner
United States Magistrate Judge